Hon. A. M. Buchanan,  
Hon. T. T. Land,  } *Associate Justices.*  
Hon. A. Voorhies,  
Hon. A. Duffel,

---

## Hyde & Mackie *v.* John Higgins et als.

An attachment will lie in an action for damages, arising *ex contractu* when the claim does not rest upon such uncertain elements of damage as absolutely to preclude the plaintiff from making an affidavit to the amount of the debt.

APPEAL from the Third District Court of New Orleans, *Duvigneaud,* J. *T. Gilmore,* for plaintiffs. *Mott & Fraser,* for defendants and appellants.

Merrick, C. J. This suit is accompanied by process of attachment. The cause of action alleged, is a breach (on the part of the owners of the ship) of a contract, whereby they engaged the services of plaintiff's dock for the use of the ship Speedwell.

The damages alleged, result from the getting the dock in readiness, the delay occasioned plaintiff's business, and the loss of profits.

There was a motion to dissolve the attachment on the face of the papers, on the ground that the action is one for damages. We concur with our learned brother of the District Court, that the claim, which is *ex contractu*, does not rest upon such uncertain elements of damage as absolutely to preclude the plaintiffs from making an affidavit of the amount of the debt. The exception was, therefore, properly overruled. *Crane* v. *Lewis,* 4 An.

On the merits, it appears that the Captain of the ship previous to its arrival, forwarded a letter, requesting an agent, *Mr. Morse,* to engage the Pelican dock for the ship as soon as it arrived. The agent, by mistake, applied at the office of the plaintiffs, the owners of the dry dock, it being in the same square or block with the office of the Pelican dock. Notice was given the same evening of the

HYDE
*v.*
HIGGINS.

error and the order countermanded, but plaintiffs' agents refused to give up the engagement and insisted upon docking defendants' ship. On the arrival of the ship, the matter was again explained to the plaintiffs, but they insisted upon the contract. The Captain of the ship, it seems, also admitted in conversation, that he was bound by the contract, and, perhaps, promised to use the dry dock. On the 4th of February, 1856, the plaintiffs made a formal demand on the defendants to comply, which they refused to do. The ship went into the Pelican dock on the 12th of February, and the plaintiffs still persisted in making preparation as though they expected the Speedwell. There was at the time constant employment for all the docks, and the plaintiffs did not, according to the testimony have their dock idle for more than one day.

Had it not been for the admission of the Captain that he was bound by the contract, we should have no difficulty in rendering judgment for the defendants. The agent had no authority to engage the dry dock, and when immediate notice of the fact was given plaintiffs' agents, the parties were in precisely the same situation as before the supposed agreement.

But supposing the contract to be recognized by the Captain on his arrival, and to be proved, we must then consider the question of damages.

Plaintiffs contend in this court, that they would have made a profit of $70 on the labor of the shipwrights and caulkers, and $590 for the dock itself.

The ship was five or six days in the Pelican dock. Plaintiffs were necessarily delayed at most, but one day, with the dry dock.

It would have occasioned the consumption of fuel and loss of labor to have docked the ship, as well as danger to the dock. The $590 could not, therefore, be considered as clear profits.

This is not a case for exemplary damages, and in the absence of clear proof of loss, we think all that plaintiffs can be allowed, is a sum equal to one-fourth of the dockage and profits upon the labor. There is no allegation in the petition from which the " solidarity" of defendants appears.

It is, therefore, ordered, adjudged and decreed by the court, that the judgment of the lower court be avoided and reversed, and that the plaintiffs recover and have judgment against the defendants, each for his virile share, viz, against *John Higgins*, master and part owner of the ship Speedwell, and *J. H. Puly, A. G. Cutter, J. Crocker, E. Hasty, R. Higgins, R. L. Cutter*, and *J. Higgins*, the other owners, of the sum of one hundred and eighty-five dollars, and legal interst thereon from judicial demand, to wit, March 10, 1856, until paid, with a privilege upon the property attached ; and that said defendants pay the costs of the lower court ; the plaintiffs paying the cost of this appeal.